■ In the Matter of the Claim of ELIZABETH WHITAKER et al., Respondents, v SUNSET QUEENS, INC., et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.—Appeals from decisions of the Workmen's Compensation Board, filed July 26, 1973 and May 13, 1974, which modified a referee's decision by reversing so much thereof as found no causal relation between decedent's accidental injury and subsequent amputation of his right leg, and made an award for benefits for loss of use of the right leg. The board has found that claimant's decedent sustained an accidental injury in the course of his employment when, on February 16, 1970, he was struck on the right ankle by falling lumber in the employer's store, causing a laceration. Appellants contend that this determination is not supported by substantial evidence, and cite in support of this contention the absence of any medical evidence that a laceration in fact occurred. However, we are of the view that the testimony of decedent as to the occurrence of the accident, as well as testimony of the employer's bookkeeper that decedent had reported to her that he had hurt his foot, is sufficient to support the finding of accident. A more difficult question is raised by the contention that there is no substantial evidence to support the finding of causal relation between the initial accident and the subsequent gangrenous infection which led to amputation of decedent's right leg in May, 1970. (We also note that a gangrenous condition led to the amputation of decedent's left leg in December, 1973.) It is not disputed, and the board found, that decedent was suffering from an "underlying vascular disease involving the lower extremity". The board premised its finding of causal relation on the testimony of the one medical expert who testified on behalf of claimant, Dr. V. Cummings, summarizing his testimony thusly: "An injury to an extremity that has some limitation to the blood supply, because of arteriosclerosis or occlusion of the vessels, that that injury *can* cause a sequence of events that *might* lead to an amputation * * *. It is entirely possible that the injury sustained * * * *could* lead to a sequence of events which *could* produce this disability [the claimant had]" (emphasis supplied). It is, of course, by now well established that medical opinion as to causality need not be couched in terms of certainty to be accepted by the board, provided it is the judgment of the expert that causality should and could be assumed (see *Matter of Ernest v Boggs Lake Estates,* 12 NY2d 414). This, in our opinion, is not such a case. Firstly, Dr. Cummings never expressed an opinion as to why it could be concluded that a "sequence of events" productive of decedent's disability had occurred here, and he in fact did not even express an opinion that there was causal relation here. Dr. Cummings had not seen the decedent prior to the amputation, and thus could premise his answers to hypotheticals only on the findings of other physicians. The testimony of these physicians is significant. Dr. Kave testified that when he examined decedent in April, 1970 he found both ankles to be swollen and the existence of a condition of cellulitis on both legs. He specified that he found no evidence at that time of the continuing consequences of a laceration. Dr. Magat saw decedent on his first hospital admission on February 28, 1970 and found marked swelling in both legs which radiated downward from the waist, and no evidence of any laceration or contusion. This evidence does not necessarily indicate that decedent had not suffered the injury claimed on February 16, 1970, but the

question before the board was whether there was medical evidence of a laceration which had not healed but rather had initiated a series of consequences leading to decedent's amputation. It was on this point that Dr. Cummings was pressed on cross-examination. When asked if he had a different opinion than that which he had previously given if he assumed the truth of the facts recited by Dr. Magat, particularly as to decedent's condition being bilateral rather than confined to the right leg, Dr. Cummings admitted that his opinion would be different. Subsequently, when asked "whether or not the alleged accident, this blow to the right foot, of a short time prior, could have caused this thrombosis and swelling of the extremity?", he answered, "Probably not." It is important to note that Dr. Magat's findings do not merely represent one alternative set of facts which could form the basis for a hypothetical question; his findings were unrefuted, and a response to a hypothetical inquiry based on any other facts, assumed but not proven, would have to be rejected as based on speculation. Such is the case with Dr. Cummings' opinion that causation was "entirely possible" if it were assumed that decedent had "serious consequences from an alleged laceration". Such a hypothetical inquiry begs the question, for while the record does contain evidence to permit an assumption of laceration, there is no evidence whatsoever which would allow an assumption of "serious consequences" therefrom, particularly in light of the testimony of Dr. Murphy that a laceration such as allegedly precipitated the conditions in this case would not have healed so as to leave no indicia in a period of 12 days. In this regard, the instant case is distinguishable from *Matter of Urbancik v Roseman Estates* (11 AD2d 554) and parallel to *Matter of Frisbie v Boffer Business Serv.* (5 AD2d 1038). In the latter, the only proof in support of causation was the testimony of a physician who said that claimant's injury could have caused the disability, but was of the opinion that it had not. We reversed an award of benefits. In *Urbancik,* the claimant there, as in the present case, had an underlying vascular deficiency, suffered a blow to the foot, and ultimately developed gangrene requiring amputation. There, however, there was evidence that claimant's foot had become increasingly discolored after the accident—serious consequences of which there is no proof in the present case—and the operating surgeon testified that he was reasonably certain of causality. Here, by contrast, Dr. Cummings, who can rely only on the findings of other physicians, merely opined that in general a trauma to a person in decedent's condition could ultimately lead to the consequences which occurred here, but when pinpointed as to causality in this particular case felt there was "probably not" any and admitted he would change his opinion based on the truth of Dr. Magat's findings. Moreover, as previously noted, his opinion as to "possible" causation was premised on an assumption of serious consequences from the laceration which could not be established by the evidence. Decisions reversed, and claim dismissed, without costs. Greenblott, J. P., Kane, Main, Larkin and Reynolds, JJ., concur.